**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HERITAGE INTEGRITY INVESTMENT TRUST,

*Plaintiff,*

—against—

COMPUTERSHARE TRUST COMPANY. N.A.,

*Defendant.*

No. 1:25-cv-09088-JPC-BCM

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Respectfully Submitted,

Elaine Platt, Esq.
**Jones Law Firm, P.C.**
5 Tudor City Place
New York, NY 10017
Office: (212) 258-0685
Direct: (646) 602-1489
elaine@joneslawnyc.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**


Preliminary Statement …………………………………………………....……………….…… 1

Objections …………………………………………………………………..……………... 2

Objection 1
The Report and Recommendation ("R&R")
Exceeds the Permissible Rule 12(b)(6) Record ………………………………...…….. 2

Objection 2
Plaintiff has Plausibly Pleaded a
Claim for Common Law Negligence …………………………………………………. 3

Objection 3
Plaintiff Plausibly Pleaded a
Breach of Duty by an Escrow Agent …………………………………………………. 4

Objection 4
Plaintiff had Plausibly Pleaded
A Cause of Action for Fraud ………………………………………………………….. 6

Objection 5
The Report Erroneously Applies an Unduly Narrow Definition of
Conversion and Fails to Address the Conversion Theory Actually Pleaded ..…………... 9

Objection 6
Breach of Statutory Duty and
Statutory Negligence are Viable Claims ……………………………………...… 10

Objection 7
The Complaint Should be Amended ………………………………………………… 12

Conclusion ……………………………………………………………………………... 14

Certificate of Compliance ……………………………………………………………… 16

Certification Regarding Use of Artificial Intelligence in Filings …………………..…. ............17

# TABLE OF AUTHORITIES

## CASES

*Campbell v Liberty Transfer Co.* ........................................ 4
2006 US Dist LEXIS 91568 [EDNY]

*Cowen & Co. v. Atlas Stock Transfer Co.* ........................................ 11
695 P.2d 109

*DDJ Management, LLC v. Rhone Group LLC* ........................................ 7
15 N.Y.3d 147 (2010)

*Dougherty v Town of N. Hempstead Bd. of Zoning Appeals* ........................................ 14
282 F3d 83 [2d Cir 2002]

*Espinal v. Melville Snow Contractors, Inc.* ........................................ 4
98 N.Y.2d 136 (2002)

*Fin. Guar. Ins. Co. v Putnam Advisory Co., LLC* ........................................ 8
783 F3d 395 [2d Cir 2015]

*Global Network Communications, Inc. v. City of New York* ........................................ 2, 3
458 F.3d 150 (2d Cir. 2006)

*Goel v. Bunge, Ltd.* ........................................ 2
820 F.3d 554 (2d Cir. 2016)

*Greenapple v. Capital One, N.A.* ........................................ 5
92 A.D.3d 548 (1st Dep't 2012)

*Grumman Allied Indus. v Rohr Indus.* ........................................ 6
748 F2d 729 [2d Cir 1984]

*In re Devick* ........................................ 11
315 Ill. App. 3d 908

*Lerner v Fleet Bank, N.A.* ........................................ 8
459 F3d 273 [2d Cir 2006]

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC* ........................................ 12
797 F.3d 160 (2d Cir. 2015)

*Mallis v Bankers Trust Co.* ........................................ 7
615 F2d 68 [2d Cir 1980]

*Merrill Lynch & Co. v Allegheny Energy, Inc.* ……..…………………………………………. 6
500 F3d 171 [2d Cir 2007]

*Sasidharan v. Piverger*, …………………………..……………………………………….. 5
145 A.D.3d 814 (2d Dep't 2016)

*Takayama v Schaefer* ………………………………………………………………….. 5
240 AD2d 21, 2nd Dept, 1998

*Thyroff v Nationwide Mut. Ins. Co.* ……………………..…………………………….. 9
8 NY3d 283 [2007]

**STATUTES**

UCC 8-401-407 ……………………………………………………………… 10, 11

# PRELIMINARY STATEMENT

**The Magistrate's Report**

Magistrate Moses dismissed the Complaint, and said that we shouldn't be permitted to amend the Complaint, because any amendment had to be futile.

This is erroneous.

**Assignment of Ruwack's Claims**

Since the time that our briefs were submitted, Ruwack, the issuer of the securities at issue, has assigned all of its claims against Computershare to Heritage, and Heritage seeks to amend the Complaint, in pertinent part, to include the Ruwack claims, which are not futile.

**New Evidence**

Since the time that our briefs were submitted, we have been able to acquire new evidence, that wasn't available to us before.

**Objections to Conclusions**

With all due respect, we object to some of the conclusions of law and fact made by the Magistrate, and request a de novo review.

**Where There's a Wrong, There is a Remedy**

This principle was taught to me in law school, and I have since held to the faith that our system of jurisprudence does indeed provide a remedy where there is a wrong.

And the uncontested facts in our case, show that Computershare has committed a litany of wrongs:

- After removing a restriction from the securities, it failed to update the CUSIP, making the securities unrecognizable, and therefore unmarketable;

- After promising Ruwack that it would sponsor it for full service at the DTC, it broke its promise and refused to sponsor, thereby making all of Ruwack's securities unmarketable; and
- While acting as an escrow agent, it knew that the sales contract would be breached and that Heritage would not get what it had contract for, and yet it failed to disclose this information to Heritage, and released Heritage's funds that it held in escrow, to close the sale.

Plaintiff asks this Court to permit it to have a remedy for these wrongs, which are justified by both the law and the facts.

## OBJECTIONS

## OBJECTION 1

## THE REPORT AND RECOMMENDATION ("R&R") EXCEEDS THE PERMISSIBLE RULE 12(b)(6) RECORD

The R&R states categorically that every document it considered outside the Complaint and attachments was incorporated, integral, or judicially noticeable. R&R 19–20. That conclusion is not supported by a document-by-document analysis, and the R&R then uses material from separate civil and criminal proceedings for more than the limited fact that those filings exist.

The Second Circuit limits the integral-document doctrine to documents on whose terms and effect the complaint heavily relies. A complaint's discussion of events learned in other litigation does not make every filing from that litigation integral. If the court wishes to resolve factual disputes using such material, Rule 12(d) requires conversion and a reasonable opportunity to submit pertinent Rule 56 material.

Controlling authority, *Goel v. Bunge, Ltd.*, 820 F.3d 554 (2d Cir. 2016) vacated a dismissal where the district court used testimony and an affidavit from other proceedings; the complaint's reliance on facts learned in litigation did not make those documents integral. *Global Network*

*Communications, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) holds that a court may notice the existence of public filings, but may not use them to establish disputed facts.

Applications to this Report:

- Part III devotes roughly five pages to investor suits, criminal proceedings, counsel's disqualification, the vacated Ruwack default, and evolving allegations in other actions, expressly to highlight Heritage's 'ever-changing reasons' for its loss. R&R 13–18. That is credibility and merits context, not merely notice that filings exist.
- Footnote 17 opines that the Notes were unlikely to have appreciable market value based on Ruwack's asserted inability to retain counsel. R&R 12. That is a factual inference from outside material adverse to Heritage, not a proper Rule 12 inference.
- Footnotes 20 and 22 question the purchase price and counsel's statements in other proceedings. R&R 14, 16. Those matters are not necessary to decide whether this Complaint states a claim and carry an obvious risk of contaminating the pleading analysis.
- The R&R relies on Rule 11 letters, transcripts, and prior briefing when denying leave to amend. R&R 41–42. Those documents may establish procedural chronology, but adversary accusations and warnings do not establish that amendment is futile or that pleaded facts are false.

The district judge should exclude the outside factual material or, at minimum, disregard it for its truth and conduct de novo review on the Complaint-level allegations as described in the two permitted documents.

## OBJECTION 2

## PLAINTIFF HAS PLAUSIBLY PLEADED A CLAIM FOR COMMON LAW NEGLIGENCE

**There was Misfeasance**

The Magistrate simply concluded that there was "non-feasance" (which isn't actionable), as opposed to "misfeasance" (which is actionable), with no legal basis for that conclusion. Indeed caselaw supports the concept that an action that is not completed, is "misfeasance," not non-

feasance. In our case, the action was to remove the restriction on the securities, and the correct conclusion of that action was to update the CUSIP, which wasn't done, and that was "misfeasance". (See *Campbell v Liberty Transfer Co.*, 2006 US Dist. Lexis 91568 [EDNY].

**Detrimental Reliance and Perpetuation**

As a general rule, which the R&R solely relies on, a transfer agent only owes its duty to the Issuer. But there was exceptions to this rule, and they are applicable here.

New York recognizes limited tort duties to third parties where a service provider induces detrimental reliance, or entirely displaces another party's duty.

*Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136 (2002) identifies these exceptions. In our case Computershare undertook the specific transfer-record function for the Notes, and allegedly perpetuated inaccurate identifying data after a restriction status changed, directly impairing Heritage's property.

The R&R criticizes the Complaint because it does not allege that Computershare caused detrimental reliance, and affirmative perpetuation of inaccurate data. R&R 22 n.23. This issue is easily resolved by a simple amendment that wouldn't be futile.

## OBJECTION 3

## PLAINTIFF PLAUSIBLY PLEADED A BREACH OF DUTY BY AN ESCROW AGENT

**Transfer Agent vs Escrow Agent**

Plaintiff's claim arises from Computershare's conduct while acting as escrow agent and holding Heritage's funds pending completion of the securities transaction. Plaintiff alleges that Computershare accepted Heritage's funds into escrow, received a copy of the Purchase Agreement governing the transaction, learned before closing that Ruwack would not perform one of the Agreement's material terms, communicated that fact directly to Ruwack, intentionally withheld

that information from Heritage, and nevertheless released Heritage's escrow funds to Ruwack.

The Report therefore predicates its analysis on whether a transfer agent had a duty to retain the funds if the contract terms were not being met, and reasoned that this was beyond the scope of a transfer agent's duties. But Plaintiff's claim is neither based on Computershare's role as a transfer agent, but that Computershare breached independent duties arising from its role as escrow agent by knowingly releasing Heritage's funds after learning that the transaction could not close in the manner represented to Heritage.

**Duty Owed to Heritage**

The R&R determined that Computershare did not owe any duty to Heritage, because Heritage was not a signatory to the Escrow contract, and that the Agreement itself disclaims rights in non-parties.

But case law provides that a duty is owed to the party whose funds were accepted and released.

In *Sasidharan v. Piverger*, 145 A.D.3d 814 (2d Dep't 2016) the Court held that an escrow agent becomes a trustee of anyone with a beneficial interest in the escrow; and in *Greenapple v. Capital One, N.A.*, 92 A.D.3d 548 (1st Dep't 2012) the Court held that an escrow agent owes fiduciary duties to all of the parties to the transaction.

The R&R says Heritage's reliance on *Takayama v Schaefer*, 240 AD2d 21, 2nd Dept, 1998, is misplaced, R&R 24 n.25, but *Sasidharan* quotes *Takayama* for the beneficial-interest rule.

## OBJECTION 4

## PLAINTIFF HAS PLAUSIBLY PLEADED A CAUSE OF ACTION FOR FRAUD

**Superior Knowledge**

Plaintiff alleges that Computershare possessed Heritage's funds; knew Heritage was proceeding in reliance upon specific contractual representations; knew those representations could not be fulfilled; and nevertheless chose to complete the transaction without informing Heritage. Under New York law, a fraud-by-omission claim may arise where the defendant owes a fiduciary duty, or possesses superior knowledge not readily available to the Plaintiff. Plaintiff alleges both circumstances here.

The Second Circuit has recognized that a duty to disclose exists where (1) a fiduciary relationship exists, or (2) one party possesses superior knowledge of the material facts not readily available to the other and knows that the other party is acting on the basis of mistaken knowledge. See *Grumman Allied Indus. v Rohr Indus*., 748 F2d 729 [2d Cir 1984]; *Merrill Lynch & Co. v Allegheny Energy, Inc*., 500 F3d 171 [2d Cir 2007].

Plaintiff alleges exactly those circumstances. Computershare received the Purchase Agreement; independently learned that Ruwack could not satisfy one of its material contractual obligations; communicated that fact directly to Ruwack while excluding Heritage; and nevertheless released Heritage's escrowed funds. Those allegations plausibly establish both a fiduciary relationship arising from Computershare's role as escrow agent and, at a minimum, superior knowledge of material facts unavailable to Heritage.

The Magistrate, without and stated basis, concludes that this knowledge could have been obtained by Heritage "with reasonable diligence," and makes the ludicrous suggestion that

Heritage could have just asked Ruwack. Seriously? Heritage should have asked Ruwack if it intended to breach its contract? What would make Heritage even think of such a thing?

The omitted information was not equally available to Heritage. Plaintiff alleges that Computershare independently learned, through its own communications with Ruwack and its own role in administering the transaction, that the promised method of issuance would not occur. Heritage was not copied on those communications and had no independent means of discovering that information. The Complaint therefore alleges facts demonstrating that the omitted information was peculiarly within Computershare's knowledge.

Under the Second Circuit's "peculiar knowledge" doctrine, where the concealed facts are peculiarly within the defendant's knowledge and the plaintiff has no independent means of discovering the truth, the plaintiff is not required to undertake an independent investigation before relying upon the defendant's omission. See *Mallis v Bankers Trust Co*., 615 F2d 68 [2d Cir 1980].

Finally, Plaintiff alleges a compelling inference of fraudulent intent. Computershare allegedly knew that Heritage was proceeding under a mistaken belief, affirmatively warned only Ruwack that Heritage would not receive what it expected; and excluded Heritage from that communication.

In *DDJ Management, LLC v. Rhone Group LLC*, 15 N.Y.3d 147 (2010), the court emphasized that reasonable reliance is fact-intensive and that even sophisticated parties are not invariably required to uncover concealed facts and cautions that reasonable reliance is ordinarily not resolved on a motion to dismiss.

**Particularity**

The Report further concludes that Plaintiff failed to plead fraud with the particularity required by Rule 9(b). Respectfully, the Complaint alleges substantially more than generalized

accusations of fraud.

Rule 9(b) requires a plaintiff to identify the fraudulent omission, the individual or entity responsible for it, the time and place at which it occurred, and why the omission was fraudulent. Plaintiff's Complaint satisfied each of those requirements. Plaintiff identifies the precise contractual provisions that Computershare allegedly knew would not be satisfied; alleges that Computershare communicated that fact directly to Ruwack before closing; attaches the email in which Computershare advised Ruwack that Briggs is expecting something that Cain will not be delivering; identified when that communication occurred; alleges that Heritage was intentionally excluded from that communication; and alleges that Computershare nevertheless released Heritage's escrow funds. Those allegations identify the "who, what, when, where, and why" of the alleged fraud with considerable specificity. Indeed, it is difficult to imagine what additional factual detail Plaintiff could reasonable have alleged before discovery.

The Second Circuit has explained that Rule 9(b) requires a complaint to identify the fraudulent statement or omission, identify the speaker, state where and when the statement or omission occurred, and explain why they were fraudulent. See *Lerner v Fleet Bank, N.A.*, 459 F3d 273 [2d Cir 2006]; *Fin. Guar. Ins. Co. v Putnam Advisory Co., LLC*, 783 F3d 395 [2d Cir 2015].

Plaintiff's Complaint satisfies each of those requirements. It identifies the precise contractual provisions that Computershare allegedly knew could not be satisfied, identifies Computershare as the party possessing that knowledge; alleges the timing of Computershare's communication with Ruwack; attaches the communication itself; alleges that Heritage was intentionally excluded from that communication; and explains why the omission was fraudulent. Those allegations identify the "who, what, when, where, and why" of the alleged fraud with considerably more specificity than Rule 9(b) requires.

## OBJECTION 5

## THE REPORT ERRONEOUSLY APPLIES AN UNDULY NARROW DEFINITION OF CONVERSION AND FAILS TO ADDRESS THE CONVERSION THEORY ACTUALLY PLEADED

The Report recommends dismissal of Plaintiff's conversion claim by analyzing whether Computershare physically possessed or exercised direct control over Plaintiff's securities. Respectfully, that is not the conversion theory alleged in the Complaint.

Plaintiff does not allege that Computershare physically seized or retained the securities. Rather, Plaintiff alleges that Computershare exercised dominion over the electronic records and identifying information necessary for those securities to be recognized, transferred, and monetized. By failing to update the CUSIP after removing the trading restriction, Computershare rendered Plaintiff's securities unrecognizable within the securities clearing system and thereby prevented Plaintiff from exercising fundamental incidents of ownership, including the right to transfer, leverage, or sell the securities.

The Report therefore addresses only one subset of conversion claims, while overlooking the broader principle that conversion protects an owner's right to exercise dominion and control over property.

New York law does not limit conversion to tangible property. In *Thyroff v Nationwide Mut. Ins. Co.,* 8 NY3d 283 [2007], the Court rejected the historical distinction between tangible and intangible property, holding that electronic records may be the subject of conversion because modern property rights increasingly exist in electronic form.

Nor does conversion require that the defendant physically possesses the property. Dominion may be exercised by conduct that effectively excludes the owner from exercising the rights of ownership. Plaintiff alleges that Computershare controlled the transfer records and

identifying information necessary for recognition of the securities within the clearance system. By failing to update the CUSIP after removing the restriction, Computershare effectively prevented Plaintiff from exercising its rights to transfer, pledge, leverage, or monetize its securities. That alleged interference with Plaintiff's ownership rights is precisely the type of dominion recognized by New York conversion law.

The Report also accepts Computershare's argument that because Ruwack allegedly failed to obtain DTC full-service eligibility, Plaintiff never possessed a transferable property interest capable of conversion. That argument improperly conflates the practical marketability of the securities with Plaintiff's legal ownership rights. Conversion protects the owner's superior right to control property; it does not require that the property already be freely marketable. Plaintiff alleges that it owned the securities and possessed the legal right to transfer them, and that Computershare's separate failure to update the CUSIP independently prevented those rights from being exercised, The existence of another obstacle to transferability does not eliminate Computershare's own alleged interference with Plaintiff's property rights.

Further, Computershare cannot rely upon one alleged wrongful act to excuse another. Even assuming that Ruwack's conduct created one impediment to transferability, Plaintiff alleges that Computershare independently created a separate impediment by rendering the securities unrecognizable within the clearance system. Each wrongful act independently interfered with Plaintiff's ownership rights. One tortfeasor cannot escape liability by pointing to another separate wrongdoing.

## OBJECTION 6

## BREACH OF STATUTORY DUTY AND STATUTORY NEGLIGENCE ARE VIABLE CLAIMS

Heritage has a viable claim against Computershare under UCC 8-401-407, if the following

preconditions were met at the time it requested that the restriction be lifted, and the clean shares issued:

**Precondition 1 (Eligibility):** The owner must show they were fully eligible to hold unrestricted shares under the terms of the security. Utah Code Ann. § 70A-8-401, 810 ILCS 5/8-401, 6 Del. C. § 8-401.

**Preconditions 2 & 3 (Appropriate Person & Genuine Instruction):** The owner must have properly requested the removal of the legend, and their signature or instruction must have been verified as authentic and authorized. Utah Code Ann. § 70A-8-401, 810 ILCS 5/8-401, 6 Del. C. § 8-401, *Cowen & Co. v. Atlas Stock Transfer Co.*, 695 P.2d 109.

**Precondition 4 (Taxes):** Any transfer taxes or fees associated with removing the restriction and updating the registration must have been satisfied. Utah Code Ann. § 70A-8-401, 810 ILCS 5/8-401, 6 Del. C. § 8-401, *Cowen & Co. v. Atlas Stock Transfer Co.*, 695 P.2d 109.

**Precondition 5 (No Violation of Restrictions):** Because the restriction was legally removed, the owner must show that issuing clean, marketable shares with a valid CUSIP did not violate any remaining active issuer-imposed restrictions. Utah Code Ann. § 70A-8-401, 810 ILCS 5/8-401, 6 Del. C. § 8-401.

**Precondition 6 (No Stop-Transfer Demands):** There must have been no active, legally binding "stop-transfer" demands or adverse claims from third parties blocking the transaction. Utah Code Ann. § 70A-8-401, 810 ILCS 5/8-401, 6 Del. C. § 8-401.

**Precondition 7 (Rightful Transfer):** The owner must establish that they were legally entitled to have the restrictive legend removed and to receive marketable, fully recognized shares (making the transfer "rightful"). § 70A-8-401, 810 ILCS 5/8-401, 6 Del. C. § 8-401, *In re Devick*, 315 Ill. App. 3d 908.

If these elements are satisfied, the transfer agent's failure to update the CUSIP—which rendered the stock unmarketable—constitutes an actionable failure to properly register the transfer, making the agent liable to the owner for the resulting financial loss UCC 8-401, *Cowen & Co. v. Atlas Stock Transfer Co.*, 695 P.2d 109, *In re Devick*, 315 Ill. App. 3d 908.

The Report correctly pointed out that the Complaint failed to make a representation that these preconditions were met. But in fact they were met. This should not be a basis for dismissing two claims with prejudice. A simple sentence can be added to the Complaint, averring that these conditions were met, and that would resolve the deficiency.

**OBJECTION 7**

**THE COMPLAINT SHOULD BE AMENDED**

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015) holds that a plaintiff generally should not be forced to choose between amending before a motion is decided and forfeiting amendment. Without a ruling, plaintiff could not know which defects require cure. *Loreley* also explains that an informal alternative request is not inadequate merely because it lacks a formal motion or proposed pleading when the court has not yet identified the precise defects.

**The Magistrate Rationale**

The Report states that I had numerous Complaints under a previous index number and in other actions; and that Rule 11 motions have been made. This reasoning should not require dismissal with prejudice.

Complaints across different docket numbers is not the same as a repeated failure to cure defects after judicial rulings. The Report identifies no earlier decision holding that the present claims were deficient. And there has only been one (not amended) Complaint under this index

number.

Defense briefing and Rule 11 letters are advocacy, not neutral rulings. *Loreley* specifically rejects treating a preview of an opponent's arguments as a substitute for a definitive decision.

The Report labels amendment futile but does not show that every defect is legal and incurable. Many defects the Report identifies are factual: the statutory preconditions; details of reliance; etc.

The prior voluntary dismissal without prejudice did not itself adjudicate the merits, and does not establish futility.

At minimum, any dismissal should be without prejudice and Heritage should receive one final, time-limited opportunity to file a focused amended complaint.

**The Assignment of Ruwack's Claims**

On September 18, 2026, Ruwack assigned to Heritage, all of its claims against Computershare. (See Exhibit A, Assignment Agreement).

Heritage would like to amend the caption to read: "Heritage, individually and as Assignee of Ruwack," and then to add Ruwack's claims to the body of the Complaint.

These claims have never been adjudicated, and are not futile.

See Exhibit B, Declaration of Isaac Cain, describing the claims it has against Computershare.

Ruwack asserts that it had two separate contracts with Computershare.

In the first contract, Computershare promised to sponsor Ruwack to the DTC for full service, if Ruwack would hire Computershare to be its transfer agent.

The second contract is the Engagement Agreement with Computershare to be its transfer agent.

Ruwack alleges that the first contract was breached, because Computershare refused to sponsor Ruwack with the DTC.

Ruwack alleges that the second contract was breached when Computershare failed to update the CUSIP.

While the second contract does contain a Limitation of Liability clause, Ruwack's allegations would show that Computershare acted with such reckless disregard of the harm it was causing, that New York's public policy would not enforce the limitation of liability.

**Leave Should be Freely Granted**

Leave to amend should be freely granted unless the proposed amendment would be futile. An amendment is futile only where the proposed claim could not survive a motion to dismiss under Rule 12(b)(6). See *Dougherty v Town of N. Hempstead Bd. of Zoning Appeals*, 282 F3d 83 [2d Cir 2002]. At this stage, the Court must accept the proposed factual allegations as true and determine only whether they plausibly state a claim for relief.

## CONCLUSION

For all the above reasons, Heritage's Complaint should not be dismissed with prejudice; and Heritage should be granted leave to file an amended Complaint to add Ruwack's claims that have just recently been assigned to Heritage; and to modify the wording in some of Heritage's claims to cure any pleading deficiencies.

Dated: New York, New York
September 21, 2026

Respectfully Submitted,

_ ___

Elaine Platt, Esq.
**Jones Law Firm, P.C.**
5 Tudor City Place
New York, NY 10017
Office: (212) 258-0685
Direct: (646) 602-1489
elaine@joneslawnyc.com
*Attorneys for Plaintiff*

# CERTIFICATE OF COMPLIANCE

Pursuant to Section 4.B of the Individual Rules and Practices in Civil Cases of Judge John P. Cronan, the undersigned attorney hereby certifies that this Memorandum of Law in Support of Objections to the Magistrate Judge's Report and Recommendation complies with the strict word count limitations set forth by the Court.

1. According to the word count feature of the word processing system used to prepare this brief (Microsoft Word), the total number of words in the main text and footnotes of this document is 3,574 words.
2. This total strictly excludes the parts of the brief exempted by the Court's Individual Rules, specifically the case caption, table of contents, table of authorities, signature blocks, and this certificate of compliance.

Dated: New York, New York
September 21, 2026

Respectfully Submitted,

Elaine Platt, Esq.
**Jones Law Firm, P.C.**
5 Tudor City Place
New York, NY 10017
Office: (212) 258-0685
Direct: (646) 602-1489
elaine@joneslawnyc.com
*Attorneys for Plaintiff*

Revised: October 23, 2025

**Model Certification Regarding Use of Artificial Intelligence in Filings**

Case Name: Heritage Integrity Investment Trust v. Computershare Trust Company, N.A.

Case Number: 1:25-cv-09088

I, Elaine Platt, Esq. [print name], certify that, with respect to the filing submitted in this case on 9/21/2026 [date] and titled Memorandum of Law in Support of Objections to the Magistrate Judge's Report and Recommendation, I used an artificial intelligence ("AI") tool in preparing the filing.

I further certify that:

**1.** ☑ I personally reviewed the filing for accuracy.

☐ I did not personally review the filing for accuracy (failure to do so violates the Court's Rules).

**2.** If I reviewed the filing for accuracy, I took the following steps to verify the accuracy of all cited legal authorities and factual assertions generated by the AI tool:

I read the cases to make sure that they existed, and that they stood for the proposition that they were cited for.

I understand that I remain individually responsible for verifying the accuracy of any output produced by an AI tool, and that failure to comply with the Court's Rules may result in the filing being stricken and/or the imposition of sanctions.

Signed: Elaine Platt Date: 9/21/2026