# EXHIBIT A

## Assignment Agreement

# ASSIGNMENT OF CLAIMS

This Assignment of Claims is made and entered into as of September 18, 2026 by and between Ruwack Irrevocable Trust, with an address of 4615 Gate City Blvd #7224, Greensboro, NC 27417 ("Ruwack" or "Assignor"), and Heritage Integrity Investment Trust, with an address of 295 Madison Ave, 12th Floor, New York, NY, 10017 ("Heritage" or "Assignee").

**Recitals**

**A.** Ruwack issued certain Notes identified as 2016 Zero Coupon including CUSIP 78348DAA63.

**B.** Heritage purchased or otherwise acquired ownership of the Notes in three separate transactions pursuant to a Purchase Agreement dated November 5, 2022; a Securities Transfer Agreement, dated January 15, 2024; and a Securities Transfer Agreement, dated May 22, 2023; each between Ruwack and Heritage, and in each Ruwack represented, among other things, that the Notes were fully tradable, marketable, transferable, or otherwise eligible for trading as stated therein (the "Heritage Acquisition Contracts").

**C.** Ruwack entered into an Agreement with Computershare in which Computershare would sponsor Ruwack to be "full service" with the DTC, if Ruwack would hire Computershare to be its Transfer Agent.

**D.** Ruwack then entered into a Transfer Agent and Service Agreement effective March 4, 2020, with Computershare Trust Company, N.A. and Computershare, Inc. ("Computershare"), under which Computershare served as transfer agent for Ruwack and undertook obligations concerning the Notes, including account maintenance, processing transfers, and DTC filing services (the "Computershare Agreement").

**E.** Ruwack contends that Computershare breached both of these Agreements by refusing to sponsor, process, support, or otherwise assist Ruwack in becoming full service with the DTC, and by failing, after removal of a restriction from the Notes, to update, correct, process, or cause recognition of the applicable CUSIP or unrestricted-security status in a manner that would permit the Notes to be recognized, transferred, marketed, or traded through the relevant securities systems.

**F.** Ruwack contends further that Computershare's breaches caused the Notes not to be tradable or marketable, thereby exposing Ruwack to claims by Heritage arising from

Ruwack's representation in the Heritage Acquisition Agreements, that the Notes were tradable.

**G.** Heritage asserted claims against Ruwack in the action captioned *Heritage Integrity Investment Trust v Ruwack Irrevocable Trust*, Index No. 655659/2024, pending in the New York County Supreme Court (the "Heritage Action"), including claims based on Ruwack's alleged breach of the Heritage Acquisition Agreements.

**H.** Heritage initially sought damages in the amount of $96,000,000 based on the alleged market value of the Notes when Heritage discovered that the CUSIP had not been updated and that the Notes could not be marketed or traded, and later amended its pleading to assert damages in the amount of $101,000,000 based on the face amount allegedly due upon maturity of the Notes.

**I.** The parties desire to resolve the Heritage Action by Heritage's dismissal or discontinuance of its claims against Ruwack, in exchange for Ruwack's assignment to Heritage of Ruwack's claims against Computershare and related persons or entities, on the terms stated in this Assignment.

**J.** The parties intend that the Assignment transfer to Heritage, to the fullest extent permitted by law, all of Ruwack's claims, demands, choses in actions, rights, remedies, and recoveries against Computershare arising from or relating to the two Computershare Agreements.

**K.** The parties further intend that Heritage's discontinuance, dismissal, settlement, release, covenant not to sue, or compromise of claims against Ruwack shall not constitute, and shall not be characterized as, an adjudication, admission, compromise valuation, satisfaction, payment, offset, reduction, waiver, release, or limitation of the Assigned Claims or of the damages recoverable on the Assigned Claims from Computershare.

For good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties agree as follows:

## Article 1 – Assignment

**I.** **Assignment of Assigned Claims.** Ruwack irrevocably sells, assigns, transfers, conveys, and sets over to Heritage, and Heritage accepts, all of Ruwack's right, title, and interest in and to the Assigned Claims.

**II.** **Assigned Claims Defined.** "Assigned Claims" means all claims, demands, causes of action, choses in action, rights, remedies, damages, losses, liabilities, costs, expenses,

attorneys' fees, indemnity rights, contribution rights, equitable rights, declaratory rights, contractual rights, tort rights, statutory rights, and other rights of recovery, whether known or unknown, fixed or contingent, matured or unmatured, liquidated or unliquidated, legal or equitable, that Ruwack has, had, may have, or may hereafter have against Computershare, its predecessors, successors, assigns, affiliates, parents, subsidiaries, officers, directors, employees, agents, representatives, contractors, or insurers, arising out of, relating to, or resulting from:

**A.** the two Computershare Agreements;

**B.** Computershare's engagement as transfer agent for Ruwack or for the Notes;

**C.** any undertaking, representation, obligation, service, failure to act, refusal to act, omission, negligence, breach, default, or nonperformance relating to Ruwack becoming full service with DTC or otherwise becoming eligible, registered, sponsored, processed, approved, or recognized for DTC services;

**D.** any undertaking, representation, obligation, service, failure to act, refusal to act, omission, negligence, breach, default, or nonperformance relating to any CUSIP for the Notes, including any failure to update, change, correct,

process, coordinate, transmit, or cause recognition of any CUSIP after removal of any restriction from the Notes;

**E.** the tradability, transferability, negotiability, marketability, DTC eligibility, book-entry treatment, clearing, settlement, recognition, sale, resale, transfer, or market access of the Notes;

**F.** Ruwack's alleged breach of, exposure under, liability under, or settlement of the Heritage Sale Contract;

**G.** Heritage's assertion of claims against Ruwack in the Heritage Action or otherwise concerning the Notes; and

**H.** all damages and remedies flowing from any of the foregoing, including consequential damages, expectation damages, market-value damages, maturity-value damages, settlement-related damages, defense costs, attorneys' fees to the extent recoverable, interest, costs, and all other recoveries available under applicable law.

**III. Scope of Transfer.** The Assigned Claims include all rights necessary or useful for Heritage to prosecute, settle, compromise, enforce, collect, appeal, or otherwise realize upon the

Assigned Claims in Heritage's own name, to the extent required by law or court order, or in both names.

**IV. No Retained Interest.** Ruwack retains no ownership, control, settlement authority, release authority, or economic interest in the Assigned Claims. Any proceeds recovered on the Assigned Claims shall belong entirely to Heritage, except to the extent provided in the party's separate Settlement Agreement.

**V. No Assignment of Nonassignable Rights**. To the extent any portion of the Assigned Claims cannot be assigned as a matter of law, Ruwack assigns the maximum permissible economic, beneficial, enforcement, and proceeds interest in that portion to Heritage and shall, at Heritage's reasonable request and expense, take such lawful actions as are reasonably necessary to permit Heritage to obtain the practical benefit of that portion of the Assigned Claims.

## Article 2 — Consideration and Settlement Relationship

**I. Consideration.** As consideration for this Assignment, Heritage shall execute and file, or cause to be executed and filed, the Stipulation of Discontinuance substantially in the form attached as Exhibit A, dismissing or discontinuing Heritage's claims against Ruwack in the Heritage Action on the terms stated therein.

**II. Condition to Effectiveness.** Unless otherwise stated in the Settlement Agreement, this Assignment shall become effective upon the later of:

**A.** execution and delivery of this Assignment by Ruwack and Heritage; and

**B.** execution and filing of the Stipulation of Discontinuance in the Heritage Action.

**III. Settlement Not a Valuation Cap.** The parties expressly agree that Heritage's dismissal, discontinuance, compromise, release, or covenant not to sue Ruwack is consideration for the transfer of the Assigned Claims and is not a payment, satisfaction, adjudication, compromise valuation, liquidation, reduction, offset, accord and satisfaction, release, or discharge of the Assigned Claims against Computershare.

**IV. No Release of Computershare.** Nothing in this Assignment, the Stipulation of Discontinuance, or the settlement between Heritage and Ruwack releases, discharges, waives, compromises, covenants not to sue, or otherwise impairs any Assigned Claim against Computershare or any other non-released person or entity. Computershare is not a

released party, third-party beneficiary, intended beneficiary, or incidental beneficiary of this Assignment or of Heritage's discontinuance of claims against Ruwack.

V. **Preservation of Damage Measures.** The parties intend to preserve all damage measures that Ruwack could have asserted against Computershare immediately before this Assignment, including Ruwack's claimed consequential damages arising from its exposure to Heritage's claims and the claimed market-value damages measured by the alleged $96,000,000 market value of the Notes at or about the time Heritage discovered that the Notes could not be marketed or traded, together with such other or greater damages, including maturity-value, interest, costs, and attorneys' fees, as may be recoverable under applicable law.

VI. **No Admission.** Neither this Assignment nor the Stipulation of Discontinuance constitutes an admission by Ruwack or Heritage concerning liability, causation, damages, the enforceability of any claim, the amount of any claim, or any defense that Computershare may assert, except that, as between Ruwack and Heritage, Ruwack has assigned the Assigned Claims to Heritage.

## Article 3 — Cooperation and Control

I. **Control of Assigned Claims.** Heritage shall have the sole and exclusive right to investigate, prosecute, plead, amend, compromise, settle, release, dismiss, arbitrate, try, appeal, enforce, and collect the Assigned Claims.

II. **Cooperation by Ruwack.** Ruwack shall reasonably cooperate with Heritage in the prosecution or enforcement of the Assigned Claims, including by:

   A. providing nonprivileged documents and information in Ruwack's possession, custody, or control concerning the Computershare Agreement, the Notes, DTC, CUSIP matters, restrictions, transfer-agent services, marketability, trading, and the Heritage Action;

   B. identifying persons with relevant knowledge;

   C. executing confirmations, declarations, affidavits, verifications, consents, or other documents reasonably necessary to evidence or effectuate this Assignment;

   D. appearing for deposition, hearing, trial, arbitration, or other proceeding if reasonably requested and lawfully required; and

   E. preserving documents and electronically stored information relevant to the Assigned Claims.

III. **Privilege and Work Product.** Nothing in this Assignment requires Ruwack to waive attorney-client privilege, work-product protection, common-interest protection, or any other applicable protection. The parties may enter into a separate common-interest or joint-prosecution agreement concerning the Assigned Claims.

IV. **Further Assurances.** Ruwack shall execute and deliver such further instruments and take such further actions as Heritage may reasonably request to evidence, perfect, enforce, or give effect to this Assignment.

## Article 4 — Representations and Covenants

I. **Ruwack Representations.** Ruwack represents and warrants to Heritage that:

  A. Ruwack has not previously assigned, released, waived, discharged, compromised, or settled the Assigned Claims.

  B. Ruwack has authority to execute and deliver this Assignment and to assign the Assigned Claims to Heritage;

  C. the person signing this Assignment for Ruwack is duly authorized to do so;

  D. Ruwack has not granted any lien, security interest, participation, option, or other encumbrance in the Assigned Claims; and

  E. Ruwack will not, after the Effective Date, assign, release, waive, impair, settle, compromise, dismiss, or otherwise dispose of any Assigned Claim.

II. **Heritage Representations.** Heritage represents and warrants to Ruwack that:

  A. Heritage has authority to execute and deliver this Assignment;

  B. the person signing this Assignment for Heritage is duly authorized to do so; and

  C. Heritage is accepting the Assigned Claims as consideration for the settlement and discontinuance of the Heritage Action.

III. **No Warranty of Recovery.** Ruwack does not warrant that the Assigned Claims are valid, collectible, meritorious, enforceable, or sufficient to produce any particular recovery, except for the express representations stated in this Assignment.

## Article 5 — Releases Between Ruwack and Heritage

I. **Release of Ruwack by Heritage.** Upon effectiveness of this Assignment and the filing or entry of the Stipulation of Discontinuance, Heritage releases Ruwack from the claims asserted or that could have been asserted by Heritage against Ruwack in the

Heritage Action arising from the Heritage Acquisition Agreement, and the Notes, except for obligations created by this Assignment, the Settlement Agreement, or the Stipulation of Discontinuance.

II. **Covenant Not to Sue Ruwack.** Heritage covenants not to sue Ruwack on the released claims described in Article 5, Section I, except to enforce this Assignment, or the Stipulation of Discontinuance.

III. **No Release of Assigned Claims.** The release and covenant not to sue in this Article 5 are limited to Ruwack and do not release, impair, reduce, compromise, or extinguish the Assigned Claims against Computershare.

## Article 6 — Governing Law and Forum

I. **Governing Law.** This Assignment and all disputes arising out of or relating to this Assignment shall be governed by the laws of the State of New York, without regard to conflict-of-law principles that would require application of the laws of another jurisdiction.

II. **Forum.** Any action to enforce this Assignment may be brought in either the United States District Court for the Southern District of New York or in the courts of the State of New York located in New York County, and each party consents to personal jurisdiction and venue in those courts.

III. **Jury Waiver.** Each party knowingly, voluntarily, and irrevocably waives trial by jury in any action, proceeding, or counterclaim arising out of or relating to this Assignment.

## Article 7 — Miscellaneous

I. **Entire Agreement**. This Assignment, together with the Settlement Agreement, and the Stipulation of Discontinuance, constitute the entire agreement between Ruwack and Heritage concerning the assignment of the Assigned Claims and supersedes all prior or contemporaneous understandings on that subject.

II. **Amendments.** This Assignment may be amended only by a written instrument signed by Ruwack and Heritage.

III. **Successors and Assigns.** This Assignment binds and benefits Ruwack, Heritage, and their respective successors and permitted assigns.

**IV. Severability.** If any provision of this Agreement is held invalid or unenforceable, the remaining provisions shall remain in full force, and the invalid or unenforceable provision shall be enforced to the maximum extent permitted by law.

**V. Counterparts and Electronic Signatures.** This Assignment may be executed in counterparts, each of which is deemed an original and all of which together constitute one instrument. Signatures delivered electronically shall be effective as originals.

**VI.** Notices. Notices under this Assignment shall be in writing and delivered by personal delivery, nationally recognized overnight courier, or email with confirmation of transmission to the following addressees, or to such other address as a party designates by notice:

**A.** If to Ruwack: 4615 Gate City Blvd. #7224, Greensboro, NC 27417; email: exemptinc@protonmail.com; attention: Issac Cain.

**B.** If to Heritage: 295 Madison Avenue, 12th Floor, New York, NY 10017; email: investre@myyahoo.com; attention: Isaac ("Eli") Briggs.

**VII. Construction.** This Assignment shall be construed as drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of authorship.

**VIII. Third-Party Beneficiaries.** Except for Heritage's successors and permitted assigns with respect to the Assigned Claims, there are no third-party beneficiaries to this Agreement. Computershare is not a third-party beneficiary.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the Effective Date.

**Ruwack Irrevocable Trust**

By: ______________________

Name: Isaac Cain

Title: Trustee

Date: September 18, 2026

**Heritage Integrity Investment Trust**

By: ______________________

Name: Isaac ("Eli") Briggs

Title: Managing Trustee

Date: September 18, 2026