# EXHIBIT B

Declaration of Isaac Cain

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HERITAGE INTEGRITY INVESTMENT TRUST,<br>*Plaintiffs*,<br>v.<br>COMPUTERSHARE TRUST COMPANY,<br>*Defendant*. | CASE No. 25-cv-9088 (JPC-BCM)<br>ECF Case |

ISAAC CAIN, hereby declares the following under the penalties of perjury pursuant to 28 U.S.C. § 1746(1):

1. I, ISAAC CAIN, am a natural person and fully familiar with the below-described matters relevant to non-party RUWACK IRREVOCABLE TRUST ("Ruwack"), plaintiff HERITAGE INTEGRITY INVESTMENT TRUST ("Plaintiff"), and defendant COMPUTERSHARE TRUST COMPANY ("Defendant") from my personal experiences therewith.

2. In relevant part, Defendant knew that Ruwack had a contract with Plaintiff in which Ruwack represented that the subject securities were tradeable.

**PROMISE TO SPONSOR RUWACK FOR FULL SERVICE WITH THE DTC**

3. I had two contracts with Computershare, both of which it breached.

4. On March 6, 2020 I wrote to Computershare, saying that I was looking for a sponsor for my DTC application.

5. Computershare relied that they only provide sponsorship for their transfer agent clients, and if I'd consider engaging Computershare as my transfer agent, they would "assess" whether they'd sponsor me.

6. I wrote back that I was open to engaging them as my transfer agent.

7. There followed a whole bunch of emails over the next 10 days, in which they asked me a lot of questions about my business, and what kind of services I might need.

8. I repeatedly responded that I wanted to become DTC full service.

9. See Exhibit 1, correspondence with Computershare between March 6, 2020 and March 11, 2020.

10. On or about March 11, Computershare sent me an Engagement Agreement and asked me to sign it. (Exhibit 2).

11. The Agreement did contain a paragraph titled "DTC Filing Services" (paragraph 3.5), but I didn't see the specific word "sponsorship" in that paragraph.

12. Before I signed anything, I wanted to pin this issue down.

13. On March 17, 2020, I telephoned Computershare and spoke with Kate Shaughnessy and Joan Dromey, and put it to them directly: "If I sign this Agreement, does this mean that you will definitely sponsor me for full service, because I'm not signing if it doesn't."

14. They assured me that I had nothing to worry about.

15. Later that day, on March 17, 2020, I signed the Agreement through their online portal.

16. At first things went very well.

17. Computershare was very responsive to my need to obtain full-service eligibility with the DTC.

18. They actually filed an application for me (sometime towards the end of March 2020, or in early April, 2020).

19. They appeared to be keeping their promise.

20. But then in July of 2020, I was notified that Computershare had filled in the forms incorrectly, and that the error needed to be corrected, and the forms resubmitted.

21. I called this to the attention Joan Dromey on July 23, 2020, and she assured me that she would try to "sort this out".

22. And then Computershare just reneged on their deal. I was told flatly that "Computershare is not sponsoring eligibility and will not submit or resubmit anything to DTC with respect to eligibility".

23. See Exhibit 3, emails with Computershare from March 19, 2020 through April 21, 2021.

**FAILURE TO UPDATE CUSIP**

24. After the restriction on my securities was removed, Computershare failed to update the CUSIP with the DTC, making the securities that I issued "unrecognizable" in the system, and therefore unmarketable.

25. This is of course, a breach of our Service Agreement.

26. But for worse, I wrote to Computershare seven times between April of 2021 and May of 2023, and called them fourteen times within the same time period, begging them to correct their error, and explaining why the perpetuation of their error was causing me so much harm, but Computershare just disregarded my pleas, and didn't bother to correct the CUSIP.

27. Eli Briggs, the Managing Trustee of Heritage Integrity Investment Trust, contacted me in April of 2021, and told me that he was unable to transfer the Ruwack securities that he owned over to his broker (iBroker), because the CUSIP couldn't be supported, and therefore he was unable to market the securities.

28. Eli pointed out that the sales contract for my securities contained an express representation that the securities were marketable.

29. I asked Eli to send me a "Directive" to instruct my transfer agent to correct the CUSIP.

30. I immediately called Computershare.

31. After I received Eli's letter (dated 4/12/2021), I forwarded it to Computershare and called Computershare again.

32. This precise same pattern occurred in May, and November of 2021; in February of 2022; in April, May, and June 2023; and Computershare still wouldn't make the simple act of updating the CUSIP when it had been made aware, over and over, of how much harm it was causing us.

33. See Exhibit 4, the letters (Directives) that Eli Briggs sent me.

I hereby declare under the penalties of perjury that the foregoing is true and correct. Executed on this 21st day of September, 2026.

ISAAC CAIN