UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERITAGE INTEGRITY INVESTMENT TRUST,

Plaintiff,

-v-

COMPUTERSHARE TRUST COMPANY, N.A.,

Defendant.

25 Civ. 9088 (JPC) (BCM)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

Plaintiff Heritage Integrity Investment Trust ("Heritage") asserts claims of negligence, breach of fiduciary duty, breach of statutory duty, breach of contract, fraud, and conversion against Defendant Computershare Trust Company, N.A. ("Computershare"). Computershare served as escrow and transfer agent for an entity called Ruwack Irrevocable Trust ("Ruwack"), which issued certain restricted securities that Heritage purchased. In a nutshell, Heritage alleges that Computershare improperly failed to update the securities' identifying code (the so-called "CUSIP number") when they ceased to be restricted—which in turn prevented Heritage from being able to trade them freely. Heritage demands roughly $96 million in damages.

The Court referred this case to the Honorable Barbara C. Moses, who issued a forty-two-page Report and Recommendation, recommending that the undersigned dismiss all of Heritage's claims. For the reasons below, the Court adopts that Report and Recommendation in full, dismisses all of Heritage's claims with prejudice, and denies leave to amend.

## I. Background

### A. Facts[1]

The Court assumes familiarity with the factual background of this case and with Judge Moses's Report and Recommendation, and it recounts the material facts only briefly here.[2] In November 2020, Heritage bought notes that Ruwack had issued with a "face amount of $1 million and a [present] value of $900,000." Complaint ¶¶ 16-17. To facilitate this first transaction, Computershare "acted as escrow agent for Heritage's initial purchase . . . and processed the registration and onboarding of an online custody account." *Id.* ¶ 16.

Over the next few years, Heritage continued to buy up Ruwack's debt securities, and by May 2023, it had accumulated notes with a face amount of $101 million and a present value of roughly $96 million. *Id.* ¶¶ 18-19. Heritage held these notes via a "custodial account" administered by Computershare, which served as Ruwack's transfer agent. *Id.* ¶ 18.

[1] The Court derives the following facts—which it accepts as true for purposes of this Opinion and Order—from the Complaint, Dkt. 1 ("Complaint"), its exhibits, and other relevant documents of which judicial notice may be taken. *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (explaining that courts resolving motions to dismiss may consider "the complaint, [the] documents appended to the complaint or incorporated in the complaint by reference, and [any] matters of which judicial notice may be taken" (internal quotation marks omitted)). As Judge Moses explained at length in the Report and Recommendation, many of Heritage's allegations in the Complaint seem to conflict with certain underlying documents and Heritage's prior claims in other litigation. *See, e.g.*, Dkt. 54 ("R&R") at 9 n.13, 11 n.16, 13-20. The Court nonetheless accepts the Complaint's allegations as true for purposes of ruling on this motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that courts must accept "all the allegations in the complaint [as] true (even if doubtful in fact)").

[2] Heritage quibbles with some of the facts contained in documents that Judge Moses relied on in footnotes; none of these contested facts has legal relevance, however, and the Court accepts Heritage's invitation to "disregard" them. Dkt. 57 ("Heritage Objections") at 3. The Court does, however, consider one set of documents to which Heritage objects: the "transcripts" and "prior briefing" in this case. *Id.* The Court does not take notice of these materials for their truth but rather for "the fact of such . . . filings," *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (internal quotation marks omitted), which, as even Heritage concedes, help "establish [the] procedural chronology" of this case, Heritage Objections at 3.

On June 30, 2023, Computershare "informed" Heritage that its "entire portfolio had been moved" to a different transfer agent called Broadridge. *Id.* ¶ 20. Heritage "immediately contacted" Broadridge, which responded that it "had nothing in its system to confirm that Computershare had made any transfer of any assets in [Heritage's] name." *Id.* ¶¶ 21-22. In October 2024, after over a year of confusion—during which Heritage "lost all access to its accounts," *id.* ¶ 27—an attorney at Computershare informed Heritage that (i) in May 2023, Ruwack notified Computershare that it would be "terminating Computershare's services as Ruwack's transfer agent" toward the end of the next month; (ii) the letter explained that Broadridge would be the new transfer agent and that Broadridge would be "contacting Computershare to provide instructions" on how to hand over the securities; (iii) Broadridge never reached out to Computershare; and (iv) on the termination date, Computershare therefore returned "the files for Heritage's account to Ruwack." *Id.* ¶¶ 28-30.

By February 2025, Heritage's "account was finally reestablished," and Heritage accordingly sought to "sell its portfolio." *Id.* ¶ 34. These sales, however, "couldn't be completed"; the Depository Trust and Clearing Corporation ("DTCC"), an entity that settles securities transactions, had placed a "'chill' on the Ruwack [notes]" because they appeared to be restricted. *Id.* ¶¶ 34-35.

Heritage alleges that Computershare caused this chill. While the Ruwack notes were "initially . . . restricted"—meaning that federal securities law prohibited Heritage from trading them—that prohibition had expired, and Computershare had appropriately "removed the restrictions" "[a]pproximately two years" after Heritage purchased the notes. *Id.* ¶ 40. But in doing so, Computershare allegedly failed to "properly register the CUSIP for the securities." *Id.* ¶ 35. And because "Computershare never exchanged the restricted CUSIP number for a new

unrestricted CUSIP number," *id.* ¶ 41, Heritage was unable, even years down the line, to freely sell its securities and was thus "deprived of their $96 million cash value," *id.* ¶ 36.

## B. Procedural History

This is not the first time that Heritage has tangled with Computershare. On October 25, 2024, Heritage sued Computershare in New York Supreme Court, New York County, Index No. 655658/2024, asserting breach-of-fiduciary-duty claims. *See* R&R at 1-2. Heritage subsequently amended its complaint twice, adding additional claims under state law and a federal securities claim against Computershare and other defendants. *See Heritage Integrity Inv. Tr. v. Computershare Tr. Co., N.A.* ("*Computershare I*"), No. 24 Civ. 9309 (JPC) (BCM), Dkt. 2-3 ¶¶ 40-68. On December 6, 2024, Computershare removed the action to federal court, asserting that this Court had federal-question jurisdiction over the securities claim and supplemental jurisdiction over the state-law claims. *Id.*, Dkt. 2 at 1-9; *see* R&R at 2. A few months later, on February 7, 2025, Computershare moved to dismiss the complaint in that action. *Computershare I*, Dkt. 32. In response, on April 1, 2025, Heritage moved to amend its complaint for a third time, *id.*, Dkt. 61, and on April 7, 2025, it proposed an amended complaint alleging that Computershare breached its duties as transfer and escrow agent and committed fraud, *id.*, Dkt. 79.

After Heritage filed this proposed fourth complaint, Computershare (i) conveyed to Heritage its intent to move for sanctions under Federal Rule of Civil Procedure 11 should Heritage not immediately dismiss its claims with prejudice, Dkt. 48-16; and (ii) opposed the motion to amend, *Computershare I*, Dkt. 88. On July 8, 2025, before receiving a ruling on the motion to amend, Heritage voluntarily dismissed the entire action. *Id.*, Dkt. 116.

Roughly four months later, however, on November 2, 2025, Heritage resuscitated its claims by filing this action ("*Computershare II*"). Here, Heritage asserts seven claims, which generally duplicate and expand on those pleaded in *Computershare I*:

1. **Common law negligence:** Computershare breached its duty of care as transfer agent by failing to "update" the CUSIP number for the Ruwack notes, Complaint ¶¶ 37-44;

2. **Breach of fiduciary duty:** Computershare breached its fiduciary duty as escrow agent for Heritage's first purchase of the Ruwack notes by "disbursing Heritage's assets" without making sure that "all contractual conditions had been met," *id.* ¶¶ 45-50;

3. **Fraud:** Computershare violated Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, and committed common law fraud by "ma[king] material omissions regarding the DTC[C] eligibility of the Ruwack securities," *id.* ¶¶ 51-56;

4. **Breach of Contract:** Computershare breached a vaguely identified contract with Ruwack (presumably the transfer-agent agreement), of which Heritage was a third-party beneficiary, *id.* ¶¶ 57-62;

5. **Statutory Negligence:** Computershare committed "statutory negligence" (negligence *per se*) under Article 8 of the Uniform Commercial Code ("UCC"), *id.* ¶¶ 63-68;

6. **Statutory Violation:** Computershare directly violated UCC §§ 8-401 and 407, *id.* ¶¶ 69-75; and

7. **Conversion:** Computershare converted the Ruwack securities, *id.* ¶¶ 76-80.

On December 17, 2025, the Court held a conference regarding the new Complaint. *See* Dkt. 28 ("Dec. 17, 2025 Tr."). At the conference, Heritage's attorney, Elaine Platt, insisted that (i) she had gone through "extensive research" before filing the new suit, *id.* at 6:17-19; (ii) she was "absolutely certain that the causes of action in this [C]omplaint [were] entirely valid," *id.* at 7:11-12; and (iii) she felt that the Complaint was "bulletproof," *id.* at 14:3-4. Indeed, counsel felt so confident that she had done everything possible to state a claim, that she expressly disavowed any intent to "com[e] back seeking to amend [the] [C]omplaint." *Id.* at 14:1-3. The Court subsequently

referred this case to Judge Moses for supervision of pretrial proceedings and to issue a report and recommendation on any dispositive motions. Dkt. 22.

On December 24, 2025, apparently unimpressed with the revamped Complaint, Computershare again warned Heritage that it intended to move for sanctions. Dkt. 48-18; *see also* Fed. R. Civ. P. 11(c)(2) (providing that a motion for sanctions for violations of Rule 11(b) "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets"). And a few weeks later, on January 16, 2026, Computershare moved to dismiss. Dkt. 31. On January 21, 2026, Judge Moses requested that Computershare beef up its papers with supplemental briefing related to the issue of judicial estoppel (because Heritage had arguably taken contrary positions in a parallel state-court case). Dkt. 33. Computershare supplemented its briefing on January 30, 2026, Dkt. 37, and on March 2, 2026, Heritage opposed the motion to dismiss, Dkt. 43. On March 20, 2026, Computershare replied in further support of its motion, thus closing out this round of briefing. Dkt. 45.

Five days later, Computershare moved for sanctions. Dkts. 46-48. On April 7, 2026, Heritage opposed the sanctions motion; in its opposition, it expressly reaffirmed that it had "waive[d] . . . its right under FRCP Rule 15 to amend its Complaint" in order to "streamline and simplify the proceedings." Dkt. 49 ("Sanctions Opposition") at 2-3. This sanctions motion is pending.

On September 4, 2026, Judge Moses issued a forty-two-page Report and Recommendation recommending that the undersigned dismiss all of Heritage's claims with prejudice. Dkt. 54. On September 22, 2026—having obtained an extension of its deadline to object, *see* Dkt. 56—

Heritage objected to the Report and Recommendation. Dkt. 57, 59-60. Then, on October 7, 2026, Computershare responded to Heritage's Objections. Dkt. 62 ("Computershare Response").[3]

## II. Legal Standard

A district court may "designate a magistrate judge to . . . submit to [the court] proposed findings of fact and recommendations" on how to resolve a dispositive motion. 28 U.S.C. § 636(b)(1)(B). Upon receiving such a report and recommendation, the district court "may accept, reject, or modify [it], in whole or in part." 28 U.S.C. § 636(b)(1)(C). A party may request such modifications by objecting, in which case the district court will review "*de novo* any part of the magistrate judge's disposition that has been properly objected to." *See* Fed. R. Civ. P. 72(b)(3). That standard of review changes, however, when a party does not properly protest: "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report [forfeits] further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003). In such cases, a district court will "review only for clear error." *Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citing Federal Rule of Civil Procedure 72(b) advisory committee's note to 1983 amendment)).[4]

Meanwhile, "[t]o survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to

[3] This should have ended the briefing on Computershare's motion to dismiss. Heritage, however, responded with a sur-reply contesting representations that Computershare made in its response, Dkt. 63, and Computershare replied with a letter clarifying that Heritage was simply misreading its brief, Dkt. 64.

[4] A court also reviews only for clear error "when the objections are nonspecific or merely perfunctory responses . . . argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022) (internal quotation marks omitted). While many of Heritage's objections here arguably fit that bill, the Court nonetheless reviews Heritage's objections *de novo*.

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). And "[a] claim is plausible if the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged' and establishes 'more than a sheer possibility that a defendant has acted unlawfully.'" *Knapp v. Barclays PLC*, 171 F.4th 166, 170 (2d Cir. 2026) (quoting *Iqbal*, 556 U.S. at 678). A party may not evade this standard by offering up "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted), because a court need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III. Discussion

Heritage asserts seven claims against Computershare—all of which Judge Moses recommended be dismissed with prejudice and without leave to amend. For the reasons below, the Court agrees on every front, and therefore adopts Judge Moses's Report and Recommendation in full.

### A. Count One: Common Law Negligence

Heritage first alleges that Computershare negligently failed to update the Ruwack notes' CUSIP number, and that "Computershare was required to act with reasonable care and diligence when processing securities transfers" because it was "the transfer agent of Heritage's Notes." Complaint ¶¶ 39-44. Judge Moses recommended dismissing this claim because she concluded that Computershare owed Heritage no such duties under New York law. R&R at 20-23.[5]

[5] The parties rely on New York law, *see e.g.*, R&R at 21; Heritage Objections at 4; Computershare Response at 4, and "such implied consent is sufficient to establish choice of law" in this case, *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) (internal quotation marks and alteration omitted).

"The existence of a duty is . . . a *sine qua non* of a negligence claim," and "[i]n the absence of a duty, as a matter of law, no liability can ensue." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (internal quotation marks omitted). That basic rule dooms Heritage's claims because, as Judge Moses recognized, a transfer agent's duties "run to the issuer, not the holder of that issuer's securities." R&R at 21 (collecting cases). In other words, Computershare owed duties to *Ruwack*—not to Heritage—and Heritage's negligence claim in Count One thus fails at the first step.

Heritage does not contest this simple proposition. Instead, it attempts to circumvent it by two possible routes. First, Heritage contends that even if a holder of securities might not be able to sue a transfer agent for its negligent failure to act (nonfeasance), it may still bring a claim for affirmative wrongdoing (misfeasance); and Heritage insists that "an action that is not completed[] is misfeasance, not non-feasance." Heritage Objections at 3-4.

But Heritage mis-defines these terms. Nonfeasance is "[t]he *failure* to act when a duty to act exists." *Nonfeasance*, Black's Law Dictionary (12th ed. 2024) (emphasis added). Misfeasance, by contrast, is "[a] lawful act performed in a wrongful manner." *Misfeasance*, Black's Law Dictionary (12th ed. 2024). Heritage's argument that Computershare failed to "update the CUSIP," Complaint ¶ 11, thus clearly targets classic nonfeasance. *See Nonfeasance*, Black's Law Dictionary (12th ed. 2024) (note explaining that "passive inaction or a failure to take steps to protect [a third party] from harm" is nonfeasance (internal quotation marks omitted)). And the only case that Heritage cites (without analysis) to support its head-scratching position draws precisely the same distinction between the "total omission or failure" to act and affirmative conduct. *Campbell v. Liberty Transfer Co.*, No. 02 Civ. 3084 (DRH), 2006 WL 3751529, at *17 (E.D.N.Y. Dec. 19, 2006) (cited by Heritage Objections at 4).

Second, Heritage vaguely argues that while "a transfer agent [generally] only owes its duty to the [i]ssuer," an "exception[] to this rule" applies when a party detrimentally relied on the defendant's promises. Heritage Objections at 4. Heritage admits, however, that its Complaint "does not allege that Computershare caused detrimental reliance," and it thus stakes this entire argument on its ability to *amend* the Complaint. *Id.* But Heritage's scattershot musings do not propose possible amendments, explain how such hypothetical amendments would cure the problems in its Complaint, or clearly articulate any possible detrimental-reliance theory. And in any event, Heritage cannot depend on what it might plead in a potential amended complaint because, as discussed below, the Court denies its motion to amend. *See infra* III.G.

**B. Count Two: Breach of Fiduciary Duties as Escrow Agent**

Heritage next contends that Computershare breached its duties as escrow agent with respect to Heritage's first purchase of Ruwack's securities—which is the only transaction that Computershare escrowed. Complaint ¶¶ 45-50. Heritage reasons that (i) as "escrow agent," Computershare owed Heritage a fiduciary duty; (ii) Heritage's purchase agreement with Ruwack "provided for the electronic transfer of the shares to Heritage's brokerage account"; (iii) "Computershare knew that this type of transfer could not be done"; and (iv) Computershare improperly "moved forward with the [first] sale" of Ruwack's securities, "even though the transfer of securities could not be done electronically." *Id.* ¶¶ 46-49.

Judge Moses concluded that this theory fails for two independent reasons. First, a plaintiff asserting a "breach of a fiduciary obligation" must show "the existence of a fiduciary duty." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). And "an escrow agreement creates a fiduciary relationship [only] between the escrow agent and the parties to the escrow transaction." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 728 (S.D.N.Y. 2014).

But, as Judge Moses pointed out, "only Ruwack and Computershare" were parties to the escrow agreement here, and the contract expressly *excluded* third parties from asserting any fiduciary rights. R&R at 25; *see* Dkt. 32-7 ("Escrow Agreement") § 13 ("A person who is not a party to this Agreement shall have no right to enforce any term of this Agreement."). Judge Moses therefore concluded that Heritage could not assert any breach of the fiduciary duties created by this particular contract.

Second, Judge Moses explained that "[e]ven if Heritage were a party to . . . the escrow agreement, its fiduciary duty claim would [still] fail, because Computershare's duties as escrow agent were narrow and ministerial." R&R at 25. "The scope of an Escrow Agent's fiduciary duty is defined by the scope of its contractual duty under the Escrow Agreement." *Qube Films Ltd v. Padell*, No. 13 Civ. 8405 (AJN), 2016 WL 881128, at *4 (S.D.N.Y. Mar. 1, 2016); *see Pan-Am. Life Ins. Co. v. Antarctica Cap. Mgmt., LLC*, No. 20 Civ. 9236 (ALC), 2022 WL 992840, at *5 (S.D.N.Y. Mar. 31, 2022) (same). And here, as Judge Moses observed, the contract did not require Computershare to "monitor Ruwack's compliance with the promises [that Ruwack] made" in its *separate* purchase agreement with Heritage. R&R at 26. On the contrary, the agreement provided that Computershare would not be "responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between [Ruwack], and [Heritage]," and that Computershare would not "be required to determine if any person or entity ha[d] complied with any such agreements." Escrow Agreement § 5(a).

Faced with these problems, Heritage nevertheless contends that "a duty is" automatically "owed to the party whose funds were accepted and released" via an escrow agreement. Heritage

Objections at 5.[6] But whatever the merits of that argument, it addresses only the issue of whether Computershare owed Heritage a duty—not the independent question of whether Computershare breached that duty. And while Heritage argues that Computershare generally owed fiduciary obligations even to non-parties to the escrow agreement, *see id.*, it does not explain why those obligations—if they do exist—stretch beyond the fiduciary duties created by the agreement, or how Judge Moses erred in concluding that Computershare honored any hypothetical duty that it might have owed. Heritage has thus effectively forfeited any ability to challenge Judge Moses's findings on this score. *See Miller*, 43 F.4th at 120 (explaining that parties forfeit arguments if their objections are "nonspecific" or "perfunctory" (internal quotation marks omitted)). Furthermore, even applying *de novo* review, the Court concludes that Judge Moses correctly interpreted the plain and unambiguous language of the contract—which expressly did *not* create the sort of third-party-monitoring-and-reporting duty that Heritage invokes here. *See Ray Legal Consulting Grp.*, 37 F. Supp. 3d at 728 (explaining that fiduciary duties require "'strict compliance with the conditions imposed' *by the escrow agreement*" (emphasis added) (quoting *Great Am. Ins. Co. v. Canandaigua Nat'l Bank & Tr. Co.,* 804 N.Y.S.2d 177, 180 (4th Dep't 2005))). The Court therefore dismisses Heritage's negligence claim.

**C. Count Three: Fraud**

Heritage next alleges that Computershare "made material omissions" and "implied misrepresentations" concerning "the DTC[C] eligibility of the Ruwack securities." Complaint

[6] The cases that Heritage cites for this proposition—*Greenapple v. Capital One, N.A.*, 939 N.Y.S.2d 351 (1st Dep't 2012), and *Sasidharan v. Piverger*, 44 N.Y.S.3d 85 (2d Dep't 2016)—both involved plaintiffs who *were* parties to the underlying contract. *See Greenapple*, 939 N.Y.S.2d at 352; *Sasidharan*, 44 N.Y.S.3d at 86. Furthermore, neither contract in those cases appears to have included a clause strictly limiting the rights of third parties.

¶ 52. Heritage asserts that Computershare "had knowledge about the securities [sic] lack of transferability, and securities [sic] lack of eligibility for electronic delivery, but failed to disclose this information to Heritage." *Id.* ¶ 53. It therefore brings claims under both the common law and SEC Rule 10b-5, which prohibits defendants from "omit[ting] to state a material fact . . . in connection with the purchase or sale of a security," 17 CFR § 240.10b-5.

Judge Moses recommended dismissing this fraud claim as well. As Judge Moses explained, *see* R&R at 27, Rule 10b-5 and common law fraud share several elements: the plaintiff must show, with heightened "particularity," Fed. R. Civ. P. 9(b), "(1) a material misrepresentation or omission of fact (2) made by [a] defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC* ("*Loreley II*"), 13 F.4th 247, 259 (2d Cir. 2021) (internal quotation marks omitted) (discussing New York law); *see Karsch v. Blink Health Ltd.*, No. 17 Civ. 3880 (VM), 2022 WL 874767, at *9 (S.D.N.Y. Mar. 24, 2022) ("[T]he elements of a claim for securities fraud under [Rule 10b-5] are the same as those required to prove common law fraud under New York law, with an additional requirement that the fraud occurred in connection with the sale of securities.").

Based on these factors, Judge Moses found that Heritage's fraud theory stumbles out of the gate. On a fundamental level, the Complaint does not "present[] a coherent theory of reliance" or "any facts supporting . . . scienter" or an intent to defraud. R&R at 28. Judge Moses thus concluded that Heritage fails to allege basic elements of fraud, and its claims can go no further.

Judge Moses then turned to an independently dispositive, "more fundamental flaw." *Id.* at 28. If a fraud claim relies on an *omission* (as opposed to an affirmative lie), the plaintiff must either (i) allege that the defendant had a "duty to disclose" the relevant information, *Basic Inc. v.*

*Levinson*, 485 U.S. 224, 239 n.17 (1988); *see City of Long Beach v. Agostisi*, 200 N.Y.S.3d 390, 394 (2d Dep't 2023) (same); or (ii) invoke the so-called "special-facts doctrine," which applies when the defendant "possesses superior knowledge, not readily available to the [plaintiff], and knows that the [plaintiff] is acting on the basis of mistaken knowledge," *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005) (internal quotation marks omitted).

Judge Moses concluded that Heritage cannot hang its hat on either of these doctrinal hooks. Heritage's duty-based theory of fraud fails, Judge Moses determined, because "a transfer agent . . . is generally under no fiduciary duty to the owners of securities that pass through its hands." R&R at 29 (quoting *Edwards & Hanly v. Wells Fargo Sec. Clearance Corp.*, 602 F.2d 478, 484 (2d Cir. 1979) (brackets omitted)). And, Judge Moses reasoned, Heritage cannot rely on the special-facts doctrine because Computershare had no "superior knowledge" that was not "readily available"; after all, Heritage easily could have discovered any possible restrictions on its securities by consulting with Ruwack, which issued those securities and contracted directly with Heritage. R&R at 29-30.

Heritage once again offers up feeble objections. First, it contends—in a single sentence—that Computershare owed Heritage a fiduciary duty to affirmatively disclose all possibly relevant facts because it was the "escrow agent" for one of Heritage's transactions with Ruwack. Heritage Objections at 6. This theory fails, however, both because Heritage barely develops it and for the reasons discussed above for why Computershare owed no broad-ranging fiduciary duty to Heritage in its capacity as escrow agent. *See supra* III.B; *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (explaining that when an "issue is adverted to only in a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived" (brackets and internal quotation marks omitted)).

Second, invoking the special-facts doctrine, Heritage argues that it could not possibly have learned about the continuing restrictions on its securities from Ruwack itself, that it had no reason to "even think of [asking] such a thing," and that Judge Moses's suggestion to the contrary was "ludicrous." Heritage Objections at 6-7. But Heritage (i) had a direct contractual relationship with Ruwack; (ii) described itself in that contract as a "sophisticated investor" buying securities "with a full understanding of all of the terms, conditions and risks thereof," Dkt. 41-1 § 3.2(g); and (iii) now claims that it had almost $100 million riding on the transferability of its securities, Complaint at 10. Heritage thus had both the means and incentive to monitor its own securities; instead, it appears to have performed no diligence of any kind. Such a lackadaisical approach hardly amounts to the "exercise of ordinary intelligence" and effort needed to invoke the special-facts doctrine. *Loreley II*, 13 F.4th at 263 (internal quotation marks omitted); *see id.* (finding that a "sophisticated" entity could not rely on the special-facts doctrine because it should have "inquire[d] further").

**D. Count Four: Breach of Transfer-Agent Contract**

Heritage's next claim asserts that Computershare's contract with Ruwack included a clause "requir[ing] Computershare to 'facilitate' filings and communications" with third parties like DTCC, and that Computershare breached that contract by failing to "help [Ruwack] become 'full service'" with DTCC. Complaint ¶¶ 58-61. Judge Moses found that (i) this claim is conclusory; (ii) the Complaint does not allege that Heritage had ever seen the contract (or even that it existed); (iii) the Complaint fails to allege that Heritage was either a party to the (hypothetical) contract or a third-party beneficiary; and (iv) Heritage's only argument in support of its position is that it had searched for a "typical" engagement agreement on Lexis, and that this template included a boilerplate "facilitation" clause. R&R at 31-34.

Heritage has not objected to Judge Moses's dismissal of this claim. Nevertheless, even reviewing this claim *de novo*, the Court agrees with Judge Moses's analysis.

**E. Counts Five and Six: Negligence *Per Se* and Breach of Statutory Duty**

Heritage next alleges that Computershare committed negligence *per se* and breached its statutory duties by violating Article 8 of the UCC. Complaint ¶¶ 63-75. To support its negligence *per se* claim, Heritage asserts that "[u]nder Article 8 of the UCC, transfer agents are required to ensure that securities are properly registered and transferable," and that Computershare fell short of this duty by failing "to update the CUSIP." *Id.* ¶¶ 64-65. As for its breach claim, Heritage points more specifically to Computershare's "statutory obligation[s]" under UCC §§ 8-401 and 407, which Computershare allegedly contravened by failing to update the CUSIP number. *Id.* ¶¶ 71-74.

Judge Moses recommended dismissing both claims. Addressing the negligence *per se* claim first, Judge Moses explained that Heritage has not identified any provision of the UCC creating "a general duty . . . [for agents] to facilitate the transfer of securities, much less a specific duty to update the CUSIP of a formerly restricted security in the absence of any pending or requested transaction in that security." R&R at 34-35 (internal quotation marks omitted); *see Elliott v. City of New York*, 747 N.E.2d 760, 762 (N.Y. 2001) ("[A] violation of a . . . statute that imposes a *specific duty* constitutes negligence *per se*." (emphasis added)). Heritage does not object to this finding. But even reviewing it *de novo*, the Court agrees with Judge Moses and dismisses Heritage's negligence *per se* claim.

As for Heritage's statutory-breach claim, Judge Moses looked to the actual language of the statute (which Heritage's Complaint does not quote in full). R&R at 35-36. Section 8-401(a) of the UCC requires transfer agents to "register the transfer" of securities *if* (i) as a threshold matter,

they receive "a request to register transfer"; and (ii) the transfer satisfies seven technical preconditions related to issues such as possible restrictions on the securities, the authority of the transferor, and tax collection.[7] Judge Moses explained that neither of these two prerequisites are alleged—Heritage does not "allege that it (or any else) presented . . . a request [that Computershare] register transfer of the Ruwack notes" or that "any of the seven preconditions . . . were satisfied." R&R at 36 (internal quotation marks omitted).

The Court agrees with Judge Moses as to both threshold issues. Heritage entirely fails to object to Judge Moses's finding regarding the first ground for dismissal—*i.e.*, that Heritage did not instruct Computershare to register a transfer. Even reviewing that finding *de novo*, the Court is persuaded by Judge Moses's straightforward reasoning. Furthermore, Heritage's only objection with respect to the seven preconditions reads more like a concession: Heritage admits that "the Complaint failed to make a representation that these [seven] preconditions were met," insists that "in fact they were met," and then claims that it can solve any problems by amending its Complaint (without providing any further details). Heritage Objections at 10-12. But, as discussed below, the Court denies Heritage's motion to amend. *See infra* III.G. The Court therefore dismisses Heritage's statutory-breach claim in full.

**F. Count Seven: Conversion**

Finally, Heritage alleges that Computershare converted the Ruwack securities because its "failure to update the CUSIP effectively prevented Heritage from exercising its ownership rights." Complaint ¶ 78. "Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."

[7] UCC § 8-401(a) technically applies only to "issuer[s]" of securities—not transfer agents—but UCC § 8-407 extends these issuer requirements to transfer agents.

*V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (internal quotation marks omitted). A conversion claim will thus fail unless the plaintiff can show that the defendant "exercised dominion or a right of ownership over property belonging to another" and that the plaintiff "demand[ed] . . . the property" and was "refused." *Id.* (internal quotation marks omitted).

Judge Moses concluded that Heritage fails to allege either of these two requirements. First, there is no allegation that Computershare ever exercised rights of ownership over Heritage's securities; rather, as Judge Moses explained, the Complaint generally alleges that "inaction by Computershare in 2023 (or earlier) was one of the reasons why Heritage could not transfer the Ruwack [n]otes through a particular electronic mechanism in 2025." R&R at 39. Second, Judge Moses observed that Heritage "fails to allege that it made a demand for the property, but was refused." *Id.* at 40 (internal quotation marks omitted).

Heritage objects only to Judge Moses's conclusions regarding the exercise of rights of ownership. But Heritage's primary argument barely responds to the Report and Recommendation: while Heritage stresses that "New York law does not limit conversion to tangible property," Heritage Objections at 10-11, the distinction between tangible and intangible property played no role in Judge Moses's analysis. Instead, Judge Moses concluded that Computershare's alleged tardiness in updating an identifying number did not amount to an exercise of ownership and dominion. R&R at 39.

Heritage also vaguely argues that because Computershare's mistake delayed Heritage from "exercising its rights to transfer, pledge, leverage, or monetize its securities," Computershare effectively exercised "dominion" over Heritage's securities. Heritage Objections at 10. But Heritage cites no caselaw supporting this extremely broad concept of conversion—which would prohibit much commonplace conduct and, for instance, expose bailees to the constant threat of

liability. Indeed, under Heritage's unintentional-delay-equals-dominion theory of conversion, a valet who returned a car too slowly might have converted it, as would a retail associate who forgot to remove an anti-theft tag from an article of clothing. That is simply not the law of conversion—which requires a genuine "exercise of the right of ownership." *V&A Collection*, 46 F.4th at 133.

In any event, Heritage fails to object to Judge Moses's conclusion regarding the second component of conversion—*i.e.*, that Heritage never *asked* Computershare to return its property. And even on *de novo* review, the Court agrees with Judge Moses's simple analysis of this second element. The Court therefore dismisses Heritage's conversion claim.

### G. Leave to Amend

Finally, Judge Moses recommended denial of leave to amend. R&R at 41-42. While Judge Moses acknowledged that "leave to amend a complaint should be freely given when justice so requires," she noted that (i) Heritage's current Complaint "represents [its] fifth attempt to plead a cognizable claim" and (ii) Heritage's request for leave to amend was entirely "*pro forma*," which suggested that "further amendment would be futile." *Id.*

Heritage insists that it should receive "one final, time-limited opportunity to file a focused amended complaint." Heritage Objections at 13. *But see* Sanctions Opposition at 2-3 (acknowledging that Heritage had "waive[d] . . . its right under FRCP Rule 15 to amend its Complaint"). Heritage emphasizes that it has technically never amended the operative Complaint here, and it points to *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC* ("*Loreley I*"), 797 F.3d 160 (2d Cir. 2015), where the Second Circuit explained that plaintiffs should generally be allowed to amend at least once because "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies," *id.* at 190.

But the rule in *Loreley I* does not apply here for three independent reasons. First, Heritage expressly *disavowed* any intent to amend its Complaint. *See* Dec. 17, 2025 Tr. at 14:1-3; Sanctions Opposition at 2-3. It has thus waived the ability to demand such an amendment now. *See Rapaport v. Iyer*, No. 25-841, 2026 WL 1728310, at *2 (2d Cir. June 15, 2026) (summary order) ("[W]here a plaintiff disclaims his intent to amend, he necessarily 'irrevocably waives the option offered by the district court further to amend his complaint, and must stand or fall on the complaint presently before [the Court].'" (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (brackets and ellipsis omitted)).[8]

Second, Heritage cannot credibly claim that it had no opportunity to "weigh the practicality and possible means of curing specific deficiencies." *Loreley I*, 797 F.3d at 190. In *Computershare I*, Heritage filed three complaints with leave to file a fourth pending before voluntarily dismissing the entire suit, Heritage received multiple sanctions warnings from its adversary that identified the defects in its pleadings, and Heritage's counsel was admonished by this Court of her obligation to review Rule 11. *See* R&R at 41-42. Furthermore, even if the rule in *Loreley I* did apply, that case expressly recognized that a court could deny leave to amend because of "undue delay, bad faith, [or a] dilatory motive." *Loreley I*, 797 F.3d at 190. The Court finds that Heritage has displayed all of those dubious badges here—it filed a first action, amended its complaint two times and

[8] While the record arguably contains some slight ambiguity concerning whether Heritage's counsel intended to waive *any chance* of amending the Complaint, or merely to waive the ability to amend *as of right* under Rule 15(a)(1), the Court finds the former, broader waiver. *See* Dec. 17, 2025 Tr. at 14:1-4 (when asked whether she would seek to amend the Complaint, Heritage's counsel stating "I don't think so" because "I think my complaint is bulletproof"); Sanctions Opposition at 2-3 ("In order to streamline and simplify the proceedings, and to expedite a prompt resolution, Plaintiff agreed to waive all rights under Judge Cronan's individual Rule 6, as well as its right under FRCP Rule 15 to amend its Complaint, and to proceed directly to Defendant's Rule 12(b) motion to dismiss."). Furthermore, in its sur-reply letter, Heritage does not contest Computershare's argument that Heritage fully waived its amendment rights. *Compare* Computershare Response at 12-13, *with* Dkt. 63 at 1.

proposed a third amendment, voluntarily dismissed that suit, almost immediately refiled a near-identical action, waived its right to amend, and now reverses itself and asks for permission to file yet another complaint. The Court will not tolerate such gamesmanship, which wastes judicial resources and subjects defendants to repetitious and frivolous litigation. *Cf. State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (denying leave to amend when the plaintiff made the bad-faith "tactical" choice to delay "plead[ing] the additional causes of action").

Finally, *Loreley I* also recognized that a district court may deny leave to amend on "futility" grounds, as when the "request gives no clue as to how the complaint's defects would be cured." 797 F.3d at 190 (internal quotation marks omitted). That is the case here: even in its current Objections, Heritage does not clearly "specify[] what additional facts, if any, [it] might assert in a new pleading." *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011). Indeed, Heritage merely states that it will add conclusory statements, without pointing to any new factual content. *See, e.g.*, Heritage Objections at 4 (insisting, while providing no additional facts, that Heritage could allege detrimental reliance "by a simple amendment that wouldn't be futile"); *id.* at 12 (contending, while providing no additional facts, that "[a] simple sentence can be added to the Complaint averring that" all seven UCC conditions were met).

The Court must also address one last-ditch argument. For the first time, Heritage asserts that it should be able to bring entirely new claims on behalf of Ruwack, and it attaches a (purported) agreement assigning it all of Ruwack's claims. Heritage Objections at 13; Dkt. 59. But any such claims—which Judge Moses never had a chance to address—are simply not at issue here: no version of them appears in Heritage's Complaint or in any prior complaint or motion to amend, and they have cropped up for the first time in Heritage's Objections to the Report and

Recommendation. *See Gagliardi v. Prager Metis CPAs LLC*, 738 F. Supp. 3d 469, 475 (S.D.N.Y. 2024) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." (internal quotation marks omitted)).

Furthermore, Heritage does not lay out these claims in any detail here. The purported assignment agreement merely refers generally to "all claims" related to Ruwack's relationship with Computershare. Dkt. 59 at 2-3. And while Heritage hints at new breach-of-contract theories in its Objections and in a three-and-a-half-page affidavit filed by a Ruwack employee, Heritage Objections at 13-14; Dkt. 60, the Court refuses to guess at the precise contours of Heritage's new claims. *See, e.g.*, *S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 515 (S.D.N.Y. 2015) ("It is well-settled that when seeking leave to amend, the movant must submit a complete copy of the proposed amended complaint so that both the Court and the opposing party can understand the exact changes sought." (ellipsis and internal quotation marks omitted)).[9]

In sum, the Court concludes that "granting leave to amend is unlikely to be productive." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). After taking four different bites at the apple, Heritage assured the Court that it undertook "extensive research," Dec. 17, 2025 Tr. at 6:17-19, to confirm that the pleaded causes of action were "entirely valid," *id.* at 7:11-12, and that its claims were at last "bulletproof," *id.* at 14:3-4. It then produced an eleven-page Complaint

[9] The Court also notes that Heritage's request is untimely: Heritage filed the alleged assignment agreement and supporting affidavit *after* the (already-extended) deadline to object to Judge Moses's Report and Recommendation. *See* Dkts. 57, 59, 60, 64. Furthermore, Heritage's counsel requested that extension on the grounds that she had "several competing deadlines as well as a support staff shortage . . . due to a paralegal's vacation." Dkt. 55 (extension request submitted on September 15, 2026). But Heritage then appears to have used the extra time to finalize its purported agreement with Ruwack. *See* Dkt. 59 at 9 (reflecting that the assignment agreement was finalized on September 18, 2026).

marred from tip to tail by elementary legal errors, followed by a shambolic set of objections riddled with typos, incorrectly formatted citations, and frivolous and non-responsive arguments. Heritage's disrespect and gamesmanship end today.

## IV. Conclusion

For these reasons, the Court overrules Heritage's Objections and adopts Judge Moses's Report and Recommendation in full. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 57. The case, however, shall remain open while the Court adjudicates Computershare's motion for Rule 11 sanctions. *See* Dkt. 46.

SO ORDERED.

Dated: November 2, 2026
New York, New York

JOHN P. CRONAN
United States District Judge